UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| JONATHAN ORTEGA and RYAN PATE, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>THE IOWA BOARD OF REGENTS and MICHAEL RICHARDS<br><br>               Defendants. | Case No. 21-CV-215<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jonathan Ortega and Ryan Pate ("Plaintiffs"), by and through the undersigned counsel, brings this class action against Defendants The Iowa Board of Regents ("The Board") and Michael Richards, in his official capacity as the President of the Board (collectively "Defendants"), and allege as follows based upon information and belief, except as to the allegations specifically pertaining to them, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a class action lawsuit on behalf of all persons who paid tuition and/or fees to attend universities governed by the Board[1] for in-person, on-campus educational services and experiences, and access to campus resources and facilities for the semesters or terms affected by Coronavirus Disease 2019 ("Covid-19"), including the Spring 2020 term or semester, and had their course work moved to online only learning.

2.     Such individuals, including the Plaintiffs, paid all or part of the tuition which ranges

---

[1] The Iowa Board of Regents governs three universities at issue in this case, the University of Iowa, Iowa State University, and the University of Northern Iowa (collectively, the "Universities").

from several thousand dollars for in-state undergraduate students per semester, to more than ten-thousand dollars for out-of-state undergraduate students, and international undergraduate students, based on area of focus.

3.      Both in-state, out-of-state, and international students were also charged hundreds of dollars in mandatory fees, including Activity, Services, Building & Recreation Fees, Health Facility Fees, Health Fees, and Standard Technology Fees ("Mandatory Fees"), as well as a myriad of other course and program specific fees.

4.      Defendants have not permitted the Universities to refund any amount of the tuition or any of the Mandatory Fees, even though they each implemented online only or remote-only distance learning starting on March 23, 2020.

5.      Because of Defendants' response to the Covid-19 pandemic, on or about March 23, 2020, the Universities stopped providing the services or facilities the Mandatory Fees were intended to cover.

6.      According to a Public Release on March 10, 2020, Defendants "asked the three Regent Institutions to move as quickly as possible towards the ability to deliver instruction virtually."[2] In a follow up release on March 18, 2020, Defendants declared, pursuant to the Board policy, a state of emergency at all institutions under jurisdiction of the Board.[3]

7.      The Universities uniformly responded to Covid-19 under the direction, policies, and control of Defendants.[4]

8.      The Universities' failure, at Defendants' direction, to provide the services, for

---

[2] https://www.iowaregents.edu/news/board-news/update-from-board-of-regents-president-mike-richards-on-coronavirus
[3] https://www.iowaregents.edu/news/board-news/statement-from-board-of-regents-president-mike-richards-declaring-regents-state-of-emergency
[4] https://web.iastate.edu/safety/updates/covid19/archive

which tuition and the Mandatory Fees were intended to cover since approximately March 23, 2020, is a breach of the contracts and breach of the covenant of good faith and fair dealing between Defendants and Plaintiffs and the Class and is unjust.

9.      Plaintiffs and the members of the Class have paid for tuition for a first-rate on-campus, in-person educational experience, access to services and facilities, and all the appurtenant benefits offered by the first-rate universities, which Defendants run.

10.     Instead of receiving such benefits, Plaintiffs and the members of the Class were provided a materially different alternative – namely, online instruction and remote learning without the benefit of access to campus or in-person educational experiences -- and that alternatives constitutes a breach of the contracts entered into by Plaintiffs and the members of the Class with Defendants.

11.     As to the Mandatory Fees, Plaintiffs and the members of the Class have paid fees for services and facilities which were simply not being provided during the relevant time period. This failure also constitutes a breach of the contracts entered into by Plaintiffs and the members of the Class with Defendants.

12.     In the alternative, Plaintiffs allege that Defendants' retention of full tuition and full fees -without receiving the full educational services that were previously available and promised – is unjust.

13.     Plaintiffs and the Class were deprived of their rights to in-person on campus classes, the communities of each University, access to these facilities, services, and experiences across all three campuses.

14.     Rather than offer partial refunds, credits, or discounts to Plaintiffs and the members of the Class and balance the financial difficulties associated with Covid-19, Defendants have

instead elected to place the financial burden entirely upon its students by charging them full tuition and Mandatory Fees when the services the Universities provided were not the full educational opportunities, experiences, and services for which Plaintiffs and the Class bargained, contracted, and paid.

15.     This action does not seek to allege "academic malpractice."

16.     Specifically, Plaintiffs challenge Defendants' decision to retain monies paid by Plaintiffs and the members of the Class while refusing to offer any refunds, provide any discounts, or apply any credits to the accounts of Plaintiffs and the Class when Defendants failed to provide the in-person, on-campus educational services and experiences, and access to campus resources and facilities that were bargained for promised and agreed to.

17.     Notwithstanding any argument that Defendants had no choice but to transition the Universities to an online-only educational model with limited campus access due to government orders then in effect, there was no government or municipal order in place that required Defendants to retain the full amount of tuition and the full amount of fees from Plaintiffs and the members of the Class. The University has not and cannot argue that the retention of the full tuition and Mandatory Fees of Plaintiffs and the Class was done for the health and safety of students, faculty, staff or the public at large.

18.     Plaintiffs seek, for themselves and the members of the Class, Defendants' disgorgement and return of the pro-rated portion of tuition and Mandatory Fees, proportionate to the amount of time in the respective semester when Defendants closed the Universities and switched to online only learning.

19.     Plaintiffs seek for themselves and the members of the Class protections including injunctive and declaratory relief protecting themselves and the members of the Class from paying

the full cost of tuition and full Mandatory Fees during the pendency of the Covid-19 pandemic in light of the educational services, opportunities, and experiences Defendants can actually safely provide.

20.     The Defendants are obligated to uphold the Iowa and United States Constitution.

21.     By denying in-person learning and on-campus benefits and opportunities, Defendants have violated the Iowa Constitution, Article I, § IX and Article I, § XVIII and the United States Constitution's Fifth and Fourteenth Amendments.

22.     Plaintiffs and members of the Class are entitled to a pro-rated refund of tuition and Mandatory Fees for the duration of Defendants' Covid-19 related closures of the Universities for the in-person education and on-campus services and opportunities that Plaintiffs and members of the Class have been denied.

## **PARTIES**

23.     Plaintiff Jonathan Ortega was an undergraduate student at Iowa State during the Spring 2020 semester. Iowa State charged Plaintiff Ortega approximately $4,576.00 for in-state tuition and approximately $638.95.00 in Mandatory Fees, including a $145.00 Standard technology Fee, a $120.00 Health Fee, a $365.95.00 Activity, Service, Building & Recreation Fee, and a $8.00 Health Facility Fee for the Spring 2020 semester. Plaintiff Ortega was also charged fees related to specific class including: $150.00 Df econ 101/101H Fee, a $90.00 Scf. Phys 311 Fee, and a $25.00 Econ 101 Immed. Access 0006 Fee.

24.     Plaintiff Ortega is a resident of Ames, Iowa.

25.     Plaintiff Ortega paid tuition and Mandatory Fees for in-person educational services, experiences, opportunities, and other related collegiate services. Plaintiff Ortega has not been provided a pro-rated refund of the tuition for his in-person classes that were discontinued and

moved online, or the Mandatory Fees he paid after the University's facilities were closed and events were cancelled.

26.     Plaintiff Ryan Pate was an undergraduate student at Iowa State during the Spring 2020 semester. Iowa State charged Plaintiff Pate approximately $4,852.00 for in-state tuition and approximately $638.95.00 in fees, including a $145.00 Standard technology Fee, a $120.00 Health Fee, a $365.95.00 Activity, Service, Building & Recreation Fee, and a $8.00 Health Facility Fee for the Spring 2020 semester. Plaintiff Pate was also charged a $3.00 Senior Fee, and various class related fees including: a $30.00 Scf. Nrem 330 Fee, a $50.00 Scf. A Ecl/Biol 458L Fee, and a $50.00 Scf A Ecl/Biol 459L Fee.

27.     Plaintiff Pate is a resident of Ames, Iowa.

28.     Plaintiff Pate paid tuition and Mandatory Fees for in-person educational services, experiences, opportunities, and other related collegiate services. Plaintiff Pate has not been provided a pro-rated refund of the tuition for her in-person classes that were discontinued and moved online, or the Mandatory Fees she paid after the University's facilities were closed and events were cancelled.

29.     The nature of the relationship between students, like Plaintiffs and the proposed Class and the Board is contractual.

30.     The terms of that contract are established through the documents, policy materials, prior course of conduct, and the expectations of the parties, including through the admission, application, acceptance, enrollment, registration, and payment processes. Many of those documents are not in the possession, custody, or control of Plaintiffs at the time of filing this action.

31.     Defendants, acting on behalf of the Universities, set and establish the terms of that contract, and control the nature of the offers and educational services the Universities provide.

32.     Defendant the Iowa Board of Regents is a group of nine citizens who govern the Universities, through policymaking, coordination, and oversight as provide by law.[5]

33.     The Board is granted its authority by the Iowa Legislature through Iowa Administrative Code Chapter 262 and Iowa Administrative Code Chapter 681.

34.     Defendant Michael Richards is the President of the Iowa Board of Regents, has made decisions regarding the closures and cancellations related to Covid-19, has the authority and discretion over the processes by which the Universities can elect to refund or distribute refunds, discounts, or credits to students.

35.     Upon information and belief, Defendants jointly controlled and/or managed the Universities, including the authority to contract with students and the decisions to retain the full amount of tuition, the full amount of fees, and provide students with less than the full amount of services beginning during the Spring 2020.

## JURISDICTION AND VENUE

36.     This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

37.     This court has personal jurisdiction over Defendants because Defendants maintains its principal place of business in this District.

38.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants operate their headquarters within this district.

---

[5] https://www.iowaregents.edu/the-board

**FACTUAL ALLEGATIONS**.

39.     Plaintiffs and the members of the Class attended the Universities governed by Defendants during the Spring 2020 semester and paid tuition and the Mandatory Fees.

40.     Tuition at Iowa State for the Spring 2020 semester ranged from approximately $4,000.00 - $5,000.00 for in-state undergraduate students, approximately $11,500.00 - $13,000.00 for out-of-state undergraduate students, and approximately $12,250.00 - $14,000.00 for international undergraduate students, based on area of focus. Both in-state, out-of-state, and international students were also charged approximately $636.95 in Mandatory Fees, including a $363.98 Activity, Services, Building & Recreation Fee, a $8.00 Health Facility Fee, a $120.00 Health Fee, and a $145.00 Standard Technology Fee.

41.     Tuition at the University of Iowa for the Spring 2020 semester was approximately $4,000.00 for in-state undergraduate students and approximately $15,000.00 for out-of-state undergraduate students. Both in-state and out-of-state students were also charged approximately $675.25 in Mandatory Fees, including a $260.50 Technology Fee, a $36.00 Activity Fee, a $39.50 Service Fee, a $62.00 Student Union Fee, a $61.50 Building Fee, a $67.00 Recreation Facility Fee, a $9.00 Arts & Cultural Events Fee, a $13.00 Career Services Fee, a $118.50 Student Health Fee, and a $8.25 Mental Health Fee.

42.     Tuition at the University of Northern Iowa for the Spring 2020 semester was approximately $8,000.00 for in-state undergraduate students and approximately $18,000.00 for out-of-state undergraduate students. Both in-state and out-of-state students were also charged approximately $1,273.00 in Mandatory Fees, including a Technology Fee, a Health Fee, a Heath Facility Fee, a Student Activity Fee, a Student Services Fee, a Building Fee, and a Recreation Fee.

43.     Plaintiffs and the members of the Class paid tuition for the benefit of on-campus

live interactive instruction and an on-campus educational experience throughout the semester.

44.     Plaintiffs and Defendants entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and Mandatory Fees and the Universities, in exchange, would provide in-person and on-campus educational services, experiences, opportunities, and other related services.

45.     The terms of the contractual agreement were set forth in publications from the Universities, as directed by Defendants, throughout the application process, the admission process, the enrollment, the registration process, and the payment process – including, but not limited to, the Universities' websites and circulars, the application submitted by Plaintiffs and members of the Class, the acceptance letters received by Plaintiffs and members of the Class, the registration materials, the course catalog, course listings, student handbooks, policy manuals, and other documents conveying the educational services that Defendants were offering and would provide.

46.     For example, Iowa State provided students with an acceptance letter which it highlighted the in-person and on-campus experiences a student receives at Iowa State – stating "Learning from world-class professors and engaging in experiences in and out of the classroom will prepare you for life locally and globally. You'll share one of America's most beautiful campuses with students from around the world who seek the education, experience, and diversity that is uniquely Iowa State."[6]

47.     Prior to Plaintiffs' enrollment, Defendants highlighted in circulars, express statements through the Universities' websites, application materials, and other documents that in-person educational opportunities, experiences, and services were material parts of the educational experiences that Plaintiffs and the members of the Class paid for.

---

[6] https://twitter.com/karrah_payge/status/834170338619568129/photo/1

48.     The Universities, at the direction of Defendants, offered these services to Plaintiffs in exchange for their enrollment, registration, and payment of tuition and fees.

49.     Plaintiffs made payments to Defendants based on promises made through those documents and assertions in lieu of receiving education at other universities or academic institutions – or enrolling in online only universities for less tuition and fees.

50.     At the direction of Defendants, however, the Universities have not held any in-person classes or campus-based educational services since March 23, 2020 for the Spring 2020 semester. All classes during that time were only being offered in a remote online format with no in-person instruction or interaction.

51.     Many of the services for which the tuition and Mandatory Fees were assessed were also terminated or cancelled at or about this time, such as access to University's health and wellness facilities, programs or services; fitness facilities; student events or sports; and an in-person commencement.

52.     Defendants have not provided reimbursement or refund information regarding tuition or the Mandatory Fees.

53.     Students attending the Universities during the Spring 2020 semester and other semesters impacted by Covid-19 did not choose to attend an online only institution of higher learning, but instead chose to enroll in the University's in-person educational programs – with the agreement that the Universities would provide in-person educational opportunities, services, and experiences.

54.     Defendants, though the Universities' course catalogs, websites, and other material, promote the value of the classes and courses the Universities offer, particularly in regards to the

practical and hands-on experience a student gains by enrolling in these courses.[7]

**Iowa State University**

55.    Iowa State has promoted and marketed that these Mandatory Fees are associated with specific services that the University provides. For example, Iowa State represents that:

a.    The Activity, Services, Building and Recreation Fee "supports a variety of activities and services for all students. It is not based on whether or not a student uses an individual activity or service. This fee provides several benefits such as student admission rates to *concerts* and *athletic events* and, unlimited use of CyRide, the Ames *bus system*. In addition, the fee provides support for *campus recreation facilities*, the *Memorial Union*, and *campus organizations and services* as allocated by the Government of the Student Body."[8] The Fee is further broken down into four parts including: a $44.00 Student Activities Fee, a $116.60 Student Services Fee, a $42.55 Building Fee, and a $160.80 Recreation Fee.

b.    The Heath Facility Fee: "All students are charged an $8 Health Facility Fee each fall and spring semester except for students exclusively registered for the following: courses for which no tuition is assessed; continuous registration status courses; and high school students enrolled under the Postsecondary Enrollment Options Act. These exceptions do not apply to international students (except where noted) or graduate students on graduate assistantships."[9]

c.    The Health Fee "partially finances the services of the *Thielen Student Health Center*." "Students who are exempt from the mandatory health fee may use the

---

[7] https://catalog.iastate.edu/previouscatalogs/2019-20.pdf
[8] https://www.registrar.iastate.edu/fees/glossary-of-fees#activ
[9] https://www.registrar.iastate.edu/fees/glossary-of-fees#healthfacility

services of the Thielen Student Health Center on a fee for service basis, or may elect to pay the health fee and health facility fee (based on their student type), which allows participants to receive services at the Thielen Student Health Center for the same rate as students who pay the mandatory health fees."[10]

    d.   The Technology Fee: "All students will be charged a technology fee each semester. The technology fee covers things such as maintenance, support systems, AccessPlus, and email."[11]

56.    In Iowa State's own Factbook, it touts its research programs, promising students "nearly 100 centers and institutes, world-class facilities and award-winning researchers and scholars."[12]

57.    Students are similarly promised the ability to attend various NCAA Division I sporting events at the stadiums and arenas paid for; recreational, arts, and student activity opportunities at various buildings on campus; and access to several health and wellness facilities.[13]

58.    On its website Iowa State promises hands-on learning and access to state of the art facilities. "An Iowa State university adventure is for those who want to create, share, and apply knowledge to make the world a better place. Learn and work alongside leading scholars who are conquering some of the world's biggest challenges – feeding the hungry, finding alternative fuels, and revolutionizing manufacturing."[14] "From your first step on campus, you will be surrounded by world-renowned professors, resume-building opportunities and state-of-the-art facilitates to help you accomplish your dreams."[15]

---

[10] https://www.registrar.iastate.edu/fees/glossary-of-fees#studenthealth
[11] https://www.registrar.iastate.edu/fees/glossary-of-fees#tech
[12] 2018-2019 Facts: https://web.iastate.edu/sites/default/files/about/docs/facts/facts.pdf (Last accessed July 16, 2021).
[13] *Id.*
[14] https://www.admissions.iastate.edu/WhyISU
[15] https://www.admissions.iastate.edu/apply

**University of Iowa**

59.    The University of Iowa has similarly published and defined the uses and services

for which its Mandatory Fees were intended to cover and be provided by Defendant:

   a.    The Technology Fee "supports instructional computing demands by providing

   financial support to improve the quality and quantity of student computing

   resources (*facilities*, *equipment*, and *services*) and *library* and other information

   sources."[16]

   b.    The Student Health Fee "allows a student access to *Student Health* to see a doctor

   with no office visit charge as many times during the semester as he/she needs. This

   fee also covers *health promotion services* including fitness assessments, nutrition

   counseling, etc."[17]

   c.    The Mental Health Fee "will support an increase in the number of licensed

   counselors serving UI students… [by] [c]reating a safer and healthier living and

   learning environment by working to address mental health issues is key to the

   mission of the University" and will "enhance student access to *mental health care*

   *services*."[18]

   d.    The Student Activity, Student Services, and Student Union Fees "provide funding

   to support the multitude of *activities* (student organizations/activities; partnership

   of student governments) and *services* (Cambus/Bionic Bus; Daily Iowan) available

   to UI students, both *on* and off *campus*."[19]

---

[16] http://web.archive.org/web/20200614010750/https://registrar.uiowa.edu/mandatory-fees (Last accessed July 16, 2021).
[17] *Id.*
[18] *Id.*
[19] *Id.*

e.  The Building Fee "contributes to funding for certain *construction projects on the UI campus*."[20]

f.  The Arts and Cultural Events Fee "supports cultural events and performances *on campus* that are free to students."[21]

g.  The Recreation Facility Fee: The fee "supports the *operation* and *maintenance* of *Recreational Services facilities on the UI campus*, including the new *Campus Recreation and Wellness Center (CRWC)*, as well as programmatic offerings of Recreational Services. The establishment of the fee was essential for the construction of the CRWC and is used to help pay the debt service on the facility. Beginning with the fall 2010 semester, a Recreational Services membership is required *to access all recreation facilities on campus*, including the CRWC, Field House, Hawkeye Tennis & Recreation Complex (HTRC), Fitness East and Recreation Building. A Recreational Services membership is included in the recreation fee. Once inside the facilities, most activities, including swimming, fitness, rock climbing, racquetball, basketball, volleyball, and Group Exercise classes are included with the membership. Beyond access to all recreation facilities on campus, members also receive discounts on program registration (including Lesson Programs, Rowing, Tennis Programs, Aquatics and Adventure Trips), and reduced tennis court fees."[22]

h.  The Career Services Fee supports the services within the *University of Iowa Pomerantz Career Center* for all undergraduate students.[23]

---

[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*

14

i.   The Professional Enhancement Fee is charged to all graduate students and supports "professional enhancement opportunities".[24]

60.   Furthermore, the University of Iowa markets its traditional, on-campus courses as an entirely different product than its Distance and Online Education program, which it houses on a separate and distinct website.[25]

61.   The University of Iowa maintains a separate facet of its website dedicated solely to its campus-based classrooms, access to which are paid for by students and are explicitly meant for use for courses as well as for reservations by students and faculty alike.[26]

### Policies

The Office of the Registrar, Classroom Scheduling, coordinates approximately 300 university classrooms. Our purpose is to meet the needs for the schedule of courses and maximize classroom utilization for such. Since regularly scheduled classes do not utilize the rooms entirely, special reservations will be taken for times when the rooms are not in use, subject to building hours and the University policy on Use of Facilities approved by Central Administration. Further detail can be found in **Part V, Chapter 35, of The University of Iowa Operations Manual**.

62.   Throughout the University's website, it expressly states that its facilities are intended for *student* and faculty/staff use, eliminating any argument that the University never promised in-person classroom learning.[27]

University facilities are dedicated to primary uses within the institution. Primary uses include established student, faculty, and staff activities which are part of the course of regular University business, including classroom activities, faculty and staff work and research activities, University committee meetings, regular meetings of University-wide student government, and other activities necessary to and part of the regular conduct of University business which occurs in space assigned for use during normal operating hours of the facility.

63.   The University of Iowa further promotes its unique campus life stating "Iowa

---

[24] *Id.*
[25] http://web.archive.org/web/20190617150833/https://distance.uiowa.edu/ (Last accessed July 16, 2021)
[26] http://web.archive.org/web/20200101205238/https://classrooms.uiowa.edu/policies (Last accessed July 16, 2021).
[27] http://web.archive.org/web/20200102060626/https://classrooms.uiowa.edu/eligibility-and-conditions-use (Last accessed July 16, 2021).

Avenue is a great illustration of what makes the University of Iowa such a unique and exceptional environment for our students. On one side is where students take many of their undergraduate courses and on the other is the heart of one of the nation's top college towns. Downtown Iowa city is deeply woven into student life at Iowa and there are hundreds of restaurants, stores, coffee chops, and music venues for students to enjoy."[28] Further "Iowa City is the best college town in America, and it's easy to see why."[29]

64.     The University of Iowa further emphasized how crucial its hands-on learning is to what students paid for in its circulars and website. "Experiential, hands-on learning is a core part of being a student at Iowa, both in the classroom and beyond."[30]

65.     Within its course catalog and the various descriptions of the courses offered the University of Iowa promises hands-on experience or instruction no less than 170 times.[31]

**The University of Northern Iowa**

66.     The University of Northern Iowa has also published and defined the uses and services for which its Mandatory Fees were intended to cover and be provided.[32]

a.  The Technology Fee "supports the expansion of discipline-specific technology-based services including laboratories, multimedia presentation classrooms, and demonstration stations. It also funds the replacement of equipment in student labs and supports interdisciplinary curriculum development, expanded data network access to digital resources, improved library access systems, and enhanced online learning systems and assistive technologies."[33]

---

[28] https://tour.concept3d.com/share/MBPUxf5tz/stop/2
[29] https://tour.concept3d.com/share/MBPUxf5tz/stop/3
[30] https://uiowa.edu/academics/career-preparation
[31] https://ir.uiowa.edu/cgi/viewcontent.cgi?article=1032&context=registrar_catalogs
[32] https://tuition.uni.edu/glossary-fees#mandatory (Last accessed July 6, 2021).
[33] *Id.*

b.  The Health Fee "ensures student access to essential health services, including medical, counseling and wellness services.  It provides funding for office visits with a healthcare provider for student illnesses or injuries at no cost.  It also supports public health and mental health initiatives on campus and promotes healthy activities."[34]

c.  The Health Facility Fee "provides the revenue stream to meet the bond requirements of debt incurred to renovate and expand the Student Health Center and to ensure effective maintenance and operation of the facility."[35]

d.  The Student Activities Fee "provides support to a broad range of services and activities for students, including Northern Iowa Student Government, student organizations, fine arts programs, intercollegiate academic activities, the student newspaper, homecoming and family weekend activities, diversity and inclusivity programming, and activities sponsored by the Office of Student Life."[36]

e.  The Student Services Fee "supports intercollegiate athletics which provides free tickets for students to attend athletic events. The fee also provides free transportation on the Panther Shuttle and Weekend SafeRide."[37]

f.  The Building Fee "provides the revenue stream to meet the bonding requirements of debt incurred for the renovation and expansion of Maucker Union and repairs to the roof and structure of the UNI-Dome. It ensures effective maintenance and operation of the facilities."[38]

---

[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*

g.   The Recreation Fee "primarily funds drop-in recreation, intramurals, and fitness programs and events. It covers increased costs of student wages, utility assessments, equipment replacement and administrative overhead."[39]

67.    Furthermore, the University of Northern Iowa markets its traditional, on-campus courses as an entirely different product than its Distance and Online Education program, *with the same tuition rates for in-state and out-of-state residents*.[40]

68.    Northern Iowa heavily promotes its campus and the facilities and activities that accompany it. "UNI students enjoy a vibrant college experience living on campus where they are close to classes, award-winning dining, NCAA Division I Athletics, concerts, sport clubs, intramurals, on-campus jobs and student organizations. Options for on-campus living include residence halls and apartments."[41]

69.    Northern Iowa promises to provide various research opportunities for students that necessitate the use of campus resources and equipment paid for by students, stating that "Undergraduate students at UNI have the opportunity to engage in hands-on research with faculty."[42]

70.    Northern Iowa induces students with its academic major descriptions that necessarily require on-campus facilities and resources.[43]

---

[39] *Id.*

[40] http://web.archive.org/web/20190801165301/https://continuinged.uni.edu/?utm_source=academics&utm_medium=web&utm_campaign=distance-education (Last accessed July 16, 2021).

[41] http://web.archive.org/web/20190801165319/https://uni.edu/resources/campuslife (Last accessed July 16, 2021).

[42] *Id.*

[43] http://web.archive.org/web/20190801192915/https://uni.edu/resources/colleges-departments (Last accessed July 16, 2021).

**COLLEGE OF HUMANITIES, ARTS AND SCIENCES**

The College of Humanities, Arts and Sciences (CHAS) offers countless opportunities to get lost, find yourself and ultimately grow as an individual. CHAS consists of fourteen different departments, all of which are exciting, diverse and waiting for students just like you.

Participating in research, study abroad and internships is a key part of an education in CHAS. We also have a variety of student organizations to enhance your college experience and give you a way to easily become involved. Our science majors have the chance to work with faculty members on cutting-edge research. Each year, more than 100 students are involved in exciting and important research projects such as finding cancer-fighting properties in plants, developing new cyber-defense practices and advancing new ideas in fuel-cell technologies. Humanities majors work closely with faculty to conduct research in languages, communication and philosophy that is then presented at conferences or published in academic journals. Majors in the arts, under the mentorship of faculty, have had their work featured in a variety of exhibits and performances across the state and nation. They are always looking for new ways to express themselves and create waves in the world.

**COLLEGE OF EDUCATION**

Home to Iowa's #1 education program, UNI's College of Education annually graduates hundreds of dedicated, well-prepared teachers into classrooms around the nation and the world. Nationally recognized for its innovative education programs, the college also includes the School of Kinesiology, Allied Health and Human Services for those pursuing careers in physical education, athletic and fitness training, health education, recreation services, environmental health, human services and the non-profit sector.

Students gain real-world experiences through hands-on learning both in and outside of the classroom. UNI education graduates have the skills and confidence to launch successful careers after graduation.

**COLLEGE OF BUSINESS ADMINISTRATION**

When it comes to teaching tomorrow's business leaders, no one prepares students better than UNIBusiness. Our nationally recognized program is led by dedicated faculty focused on student success in the classroom and after graduation.

Through hands-on learning opportunities and specialized programs, UNIBusiness graduates are equipped with the essential business knowledge and professional skills necessary for success in the global marketplace. We also offer opportunities for enhanced personal growth and expanded leadership including internships, professional development and certification programs, involvement in student organizations and community service, and various options and scholarships for studying abroad.

71.     The University of Northern Iowa similarly emphasized, on its website and through its application portal the importance of hands-on learning that it promised to provide. "True to its roots, UNI continues to emphasize hands-on service learning and retains the proud distinction of leading Iowa's number-one teacher education program."[44]

72.     Defendants collectively provided Plaintiffs and members of the Class materials that reflected the following on-campus services, experiences, and opportunities at the Universities:

---

[44] https://uni.edu/resources/history-traditions; https://www.commonapp.org/explore/university-northern-iowa.

Design Building : Students review models of future designs



Share

Gerdin Business Building : College of Business classroom



Share

Howe Hall : Get inspired and collaborate with others in modern learning spaces.



Curtiss Hall : Invent new foods at industry scale in our 5,000 square foot food processing pilot plant.









Students and faculty working and studying in the Biology Building.



Biology for Engineers class meeting



Main Library Learning Commons







73.     Indeed, the Board has expressly stated that "revenue generated through new differential tuition assessments will be used to maintain the quality of the academic programs and support the cost of instruction, which includes: salaries and other direct instructional costs such as the hiring and retention of faculty, *modernization of laboratory equipment and instructional technology*, *renovation and renewal of instructional facilities*, *equipment and lab supplies*, and other related expenses; administration; *student services*; *library and technology access*; *facilities*

*and operations*; and *equipment*."[45] In other words, this list refers to exactly what the tuition payments of Plaintiffs and the members of the Class are meant to cover – most of which was no longer provided as promised once students were constructively evicted from the three campuses.

74.     Other documents, including those not presently available to Plaintiffs, conveyed the same offers, representations, or promises – of on-campus and in-person educational services.

75.     Further, students, like Plaintiffs, would reasonably expect to receive on-campus and in-person educational services at the time the contracts were entered and at the time payment of tuition and Mandatory Fees were made, based on the past course of conduct, the past representations, the past experiences, and the natural of the educational services the Universities had provided for decades.

76.     However, that is not what students, including Plaintiffs, received during the semesters affected by Covid-19.

77.     Defendants recognized this fact, for example an email sent to students at the University of Iowa stated "the university understands this is not what students or their instructors signed up for at the start of the semester. The decision to move to virtual instruction was not made easily, but it was determined that proactive steps were necessary to maintain the health and safety of our students, faculty, and staff."[46]

78.     The online-only learning offered to students are materially different as compared to what the educational experience afforded Plaintiffs and the members of the Class once was.

79.     Plaintiffs and members of the Class have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

---

[45] https://www.iowaregents.edu/media/cms/0519_ITEM_3__Tuition_and_Fees_C21821D2F1DB6.pdf (Last accessed July 16, 2021).
[46] https://dailyiowan.com/2020/03/30/ui-will-not-refund-students-tuition-during-virtual-instruction-will-refund-some-housing-and-course-fees/

80. Plaintiffs and members of the Class were denied access to facilities such as libraries, laboratories, computer labs, recitations, and study rooms, and these types of facilities are integral to a college education.

81. Plaintiffs and members of the Class were denied access to activities offered by campus life fosters intellectual and academic development and independence, and networking for future careers.

82. Defendants priced the tuition and Mandatory Fees based on the in-person educational services, opportunities and experiences it was providing on campus.

83. Defendants have not made any refund of any portion of the tuition Plaintiffs and the members of the Class paid for the semesters affected by Covid-19, and they have offered no discount, rebates, or refunds going forward.

84. Defendants have not refunded any portion of the Mandatory Fees it collected from Plaintiffs and the members of the Class for the affected semester even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay.

85. Plaintiffs and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fees they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed.

86. Defendants' practice of failing to provide reimbursements for tuition and Mandatory Fees despite the materially different nature of the education and other experiences that it provided, and the reduced consideration associated with the fees, as alleged herein, violates the law, as well as, generally accepted principles of business conduct.

## CLASS ACTION ALLEGATIONS

87. Plaintiffs bring this case individually and, pursuant to Rule 23 of the Federal

Rules of Civil Procedure, on behalf of the class defined as:

> All persons who paid tuition and/or the Mandatory Fees for a student to attend in-person class(es) during the Spring 2020, or any other semester affected by Covid-19 at the Universities governed by the Board or Regents, but had their class(es) moved to online only learning (the "Class").

88.     Plaintiffs reserves the right to modify or amend the definition of the proposed Classes if necessary before this Court determines whether certification is appropriate.

89.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 and other statutes and case law regarding class action litigation.

90.     The Class is so numerous that joinder of all members is impracticable.  Although the precise number of Class members is unknown to Plaintiffs, the Universities reportedly has a total of more than 75,000 undergraduate and graduate students were enrolled during 2019-2020 school year at the Universities.

91.     The names and addresses of all such students are known to Defendants and can be identified through the Universities' records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

92.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the class members.  These questions predominate over questions that may affect only individual members of the classes because the University has acted on grounds generally applicable to the classes.  Such common legal or factual questions include, but are not limited to:

> a.   Whether the Defendants accepted money from Plaintiffs and the members of the Class in exchange for the promise to provide an in-person and on-campus live

education, as well as certain facilities and services throughout the semesters affected by Covid-19;

b.  Whether Defendants breached their contracts with Plaintiffs and the members of the Class by failing to provide them with an in-person and on-campus live education after March 23, 2020;

c.  Whether Defendants breached their contracts with Plaintiffs and the members of the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020; and

d.  Whether Defendants complied with Constitutional requirements for seizing and retaining private property of the Plaintiffs and the members of the Class;

e.  Whether Defendants afforded Plaintiffs and the members of the Class notice and due process before seizing and retaining their property;

f.  Whether Defendants breached the covenant of good faith and fair dealing with Plaintiffs and the members of the Class by failing to provide them with an in-person and on-campus live education after March 23, 2020;

g.  Whether Defendants breached the covenant of good faith and fair dealing with Plaintiffs and the members of the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

h.  The amount of damages and other relief to be awarded to Plaintiffs and the Class members.

93.  Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs and the other members of the Class each contracted with Defendants for in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory

Fee that they paid, that the Defendants stopped providing in mid-March.

94.     Plaintiffs are more than adequate class representative.  In particular:

a.  Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class action litigation;

b.  Plaintiffs' interests do not conflict with the interests of the other members of the Class they seek to represent;

c.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

d.  Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

95.     Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

96.     It is impracticable to bring members of the Classes individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The damages or financial detriment suffered

by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against the University.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(On Behalf of Plaintiffs and the Class)**

97.     Plaintiffs repeats and re-alleges the factual allegations above, as if fully alleged herein.

98.     Plaintiffs brings this claim individually and on behalf of the members of the Class.

99.     Plaintiffs and Class members entered into binding contracts with Defendants by accepting Defendants' offer to register for on-campus classes in accordance with the terms of the Catalogs, Defendants' publications, communications to students, and Defendants' usual and customary practice of providing on-campus courses.

100.     Defendants offered in-person and on-campus educational services to Plaintiffs and similarly situated students through the application process, the admission process, enrollment process, registration process, and payment process, including through numerous documents.[47]

101.     The language on the Universities' website, circulars, acceptance letters and in other

---

[47] Including documents upon information and belief that are in the sole possession custody and control of Defendants.

materials made available to students promising in-person instruction, campus facilities, services, and resources became terms of the contract with Defendants. That is, at the time of contract, all parties had the reasonable expectation that, in exchange for tuition and fee payments, Defendants would provide Plaintiffs and Class members with an on-campus education. The nature of the instruction provided by the Universities at the time Plaintiffs and Class members enrolled (i.e., in-person classroom instruction) as well as the facilities and resources offered by the Universities were and are material terms of the bargain and contractual relationship between students and Defendants.

102.    For example, Plaintiff Ortega was enrolled in PHYS 311: Intermediate Laboratory during the Spring 2020 semester which promises independent experiments conducted by each student.[48]

103.    Under their contracts with Defendants, and per Defendants' usual and customary practice of providing on-campus courses, Plaintiffs and Class members registered for on-campus courses and paid Defendants' tuition and/or fees for Defendants to provide in-person instruction and access to Defendants' facilities.

104.    Plaintiffs and Class members have fulfilled all requirements of their mutually agreed contracts, having followed the Catalogs' policies, procedures, and requirements for registering and paying for on-campus courses and access to on-campus facilities and services. Plaintiffs and Class members have paid Defendants for all financial assessments starting in the Spring 2020 semester.

105.    Defendants have breached its contract with Plaintiffs and the Class by failing to provide the promised in-person and on-campus live education as well as the services and facilities

---

[48] https://catalog.iastate.edu/previouscatalogs/2019-20.pdf pg. 1030

to which the Mandatory Fees pertained throughout the semesters affected by Covid-19 yet has retained monies paid by Plaintiffs and the Class for a live in-person education and access to these services and facilities during these semesters.

106.    Defendants' failure to provide in-person instruction and shutdown of the university facilities amount to a material breach of the contracts

107.    Plaintiffs and the members of the Class have therefore been denied the benefit of their bargain.

108.    Plaintiffs and the members of the Class have suffered damage as a direct and proximate result of the Defendants' breach in the amount of the prorated portion of the tuition and Mandatory Fees they each paid during the portion of time the semesters affected by Covid-19 in which in-person classes were discontinued and facilities were closed by the Universities.

109.    Plaintiffs and Class members are entitled to an award of money damages or partial restitution in an amount to be determined at trial as redress for Defendants' breach, including but not limited to prorated reimbursement of the tuition, fees, and other expenses for services that Defendants failed and continues to fail to deliver fully.

110.    Defendants' performance under the contracts is not excused because of Covid-19. Even if performance were excused or impossible, Defendants would nevertheless be required to return the funds received for services and/or goods that it did not provide.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE TAKINGS CLAUSE - 42 U.S.C. § 1983**
**(On Behalf of Plaintiffs and the Class)**

111.    Plaintiffs repeat and re-allege the factual allegations above as if fully set forth herein.

112.    Plaintiffs brings this claim individually and on behalf of the members of the Class.

113.    The Takings Clause of the Fifth Amendment provides property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause is made applicable to the states through the Fourteenth Amendment. See U.S. Const. amend. XIV; *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942, 198 L. Ed. 2d 497 (2017) (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897)). Thus, the Takings Clause of the U.S. Constitution prohibits states, and state agencies like the Universities, from taking private property for public use without just compensation.

114.    Takings claims may properly be brought against state agencies (such as the University) and are not barred by sovereign immunity.

115.    Common law has recognized that there is a property right by an owner in funds held in an account managed by another. Here, Defendants received payments of tuition and Mandatory Fees from private citizens, as consideration for the benefit of receiving in-person course instruction and other on-campus benefits – the funds are thus private in nature but held by a public entity. Plaintiffs and the members of the Class have a protected property right in all sums they paid to Defendants.

116.    Defendants violated the Takings Clause by failing to return to Plaintiffs and the other members of the Class that portion of the tuition and Mandatory Fees for which they received nothing, or significantly less, than what they bargained for in return. Neither Plaintiffs nor the other Class members have made a knowing and voluntary waiver of their constitutional right under the Fifth Amendment to be paid just compensation for the taking of their property right in those funds.

117.    Thus, Plaintiffs and the Class are entitled to just and reasonable compensation for the taking of their property.

### THIRD CAUSE OF ACTION
### DUE PROCESS – 42 U.S.C. § 1983
### (On Behalf of Plaintiffs and the Class)

118.   Plaintiffs repeat and reallege the factual allegations above, as if fully set forth herein.

119.   Plaintiffs bring this claim individually and on behalf of the members of the Class.

120.   Government actors must provide adequate due process procedures when depriving citizens of protected property interests. U.S. Const. amend. XIV.

121.   Michael Richards is a government actor as defined under the case law and had control over the processes by which the Universities should elect to distribute refunds, discounts, or credits to students for Covid-19 closures or cancellations.

122.   The due process clause of the U.S. Constitution prohibits the State of Iowa and the governmental agencies that it forms from depriving citizens of a protected property interest without due process of law.

123.   Plaintiffs and the Class members had a constitutionally protected property interest in the tuition and Mandatory Fees they paid for in-person education and on-campus services and opportunities but were denied due to the Covid-19 pandemic.

124.   Defendants, including Michael Richards, took action affecting Plaintiffs and the other Class members' constitutionally protected property interest by retaining amounts from Plaintiffs' and the other Class members' payment of tuition and Mandatory Fees.

125.   Defendants deprived Plaintiffs and the other Class members of their protected property interests without due process of law by, for example:

   a.   Failing to provide timely notice to Plaintiffs and the other members of the Class, whose identity and contact information Defendants either knew, or by exercise or

35

reasonable diligence should have known, of the refundable nature of the tuition and Mandatory Fees;

b.  Failing to design and implement criteria by which the tuition and Mandatory Fees can be refunded to Plaintiffs and the other members of the Class in light of the action by the Universities to cease or severely limit all on-campus, in-person classes and activities due to the Covid-19 pandemic; and

c.  Failing to design and implement a mechanism by which Plaintiffs and the other members of the Class can obtain a refund of the tuition in light of the action by the Universities to cease or severely limit all on-campus, in-person classes and activities due to the Covid-19 pandemic.

126.  Defendants' failure to comply with the requirements of due process has resulted in substantial detriment to the Plaintiffs and the Class.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Class in the alternative)

127.  Plaintiffs incorporate the allegations by reference as if fully set forth herein.

128.  Plaintiffs bring this claim of unjust enrichment individually and on behalf of the members of the Class, in the alternative, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

129.  By paying tuition and the Mandatory Fees for the Spring 2020 semester, Plaintiffs and other members of the Class conferred a benefit on Defendants.  Accordingly, Defendants agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees they paid pertained throughout that semester.

130.  Defendants have realized such benefits by retaining the payments of tuition and

fees that Plaintiffs have provided – without providing the benefits that Plaintiffs are owed.

131.    For example, Defendants failed to provide Plaintiffs and Class Members access to on-campus facilities after March 23, 2020. Yet Defendants assessed Plaintiffs with tuition and fees that covered the cost of upkeep and maintenance of such facilities, services, costs, and expenses.

132.    Plaintiffs were not able to access such facilities or services remotely.

133.    Plaintiffs paid tuition and Mandatory Fees with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that Iowa State has previously marketed, promoted, or made available prior to Covid-19.

134.    The costs incurred for having an online only program are significantly lower than the overhead needed to provide classes and services on campus.  Defendants saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

135.    Defendants have been unjustly enriched by Plaintiffs' payment of tuition and fees.

136.    Despite not being able to provide such services, Defendants failed to provide reimbursements for tuition and fees despite the materially different nature of the education and other experiences that it provided.

137.    Plaintiffs and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that judgment be entered in favor of Plaintiffs and the Class against Defendants as follows:

(a)    For an order certifying the Class under the FRCP and naming Plaintiffs as

representative of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(c)     For compensatory damages in an amount to be determined by the trier of fact;

(d)     For an order compelling disgorgement of the ill-gotten gains derived by Defendants from its misconduct;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For an order awarding Plaintiffs' reasonable attorneys' fees, costs, and expenses;

(g)     For an order awarding pre- and post-judgment interest on any amounts awarded; and,

(h)     For an order awarding such other and further relief as may be just and proper, including injunctive relief and declaratory relief.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiffs demands a trial by jury of any and all issues in this action so triable of right.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

Dated: July 16, 2021

Respectfully submitted,

By: _____
Timothy M. Hansen (State Bar No. 25205)
Michael C. Lueder *(To apply Pro Hac Vice)*
John P. Shanahan *(To apply Pro Hac Vice)*
**HANSEN REYNOLDS, LLC**
301 N. Broadway, Suite 400
Milwaukee, WI 53202
(414) 455-7676
thansen@hansenreynolds.com
mlueder@hansenreynolds.com
jshanahan@hansenreynolds.com

Jeffrey K. Brown, Esq. *(To apply Pro Hac Vice)*
Michael Tompkins, Esq. *(To apply Pro Hac Vice)*
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

Edward Ciolko, Esq. (To apply Pro Hac Vice)
Kathleen Lally, Esq. (To apply Pro Hac Vice)
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
eciolko@carlsonlynch.com
klally@carlsonlynch.com

Jason P. Sultzer, Esq. *(To apply Pro Hac Vice)*
Benjamin Zakarian, Esq. *(To apply Pro Hac Vice)*
**THE SULTZER LAW GROUP P.C.**
270 Madison Avenue, Suite 1800
New York, NY 10016
 (212) 969-7810
sultzerj@thesultzerlawgroup.com
zakarianb@thesultzerlawgroup.com

Roy T. Willey, IV, Esq. (*To apply Pro Hac Vice*)
Eric M. Poulin, Esq. (*To apply Pro Hac Vice*)
**ANASTOPOULO LAW FIRM, LLC**
32 Ann Street
Charleston, SC 29403
(843) 614-8888
roy@akimlawfirm.com
eric@akimlawfirm.com

*Counsel for Plaintiffs and Proposed Class*